1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

9

10 | JASON KOETTING, individually and on behalf of all others similarly situated,

11

CASE NO.    2:25-cv-01854

12 |          Plaintiff,

**CLASS ACTION COMPLAINT**

13 |     v.

(JURY TRIAL DEMANDED)

14 | DOUBLEDOWN INTERACTIVE LLC,

15

16 |          Defendants.

17        Plaintiff Jason Koetting, individually and on behalf of all others similarly situated, makes

18 the following allegations pursuant to the investigation of his counsel and based upon information

19 and belief, except as to allegations specifically pertaining to himself and him counsel, which are

20 based on personal knowledge.

21                              **INTRODUCTION**

22        1.      Between July 2, 2023 and May 31, 2025, the time period relevant to this action,

23 Defendant DoubleDown Interactive LLC owned, operated, and received significant revenue

24 from its online "social" casino available at www.doubledown.com and on various mobile apps,

25 where it offered casino-style slots games that operated based on a digital currency called "coins"–

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

which could be purchased and wagered for extended gameplay along with other upgrades and rewards (the "DoubleDown Gambling Platform").

2.    While Defendant advertised and promoted the DoubleDown Gambling Platform to persons in Utah as a legitimate online business, giving it an aura of legitimacy and legality to Plaintiff and Class members, the DoubleDown Gambling Platform was actually a dangerous and plainly unlawful gambling enterprise.

3.    The scheme went like this: between July 2, 2023 and May 31, 2025, Defendant sold digital coins to consumers on the DoubleDown Gambling Platform – including consumers in Utah – and then immediately accepted those coins back (from by the consumers who purchased them) as wagers on the outcomes of the various casino-style games of chance offered on the DoubleDown Gambling Platform.  Consumers who purchased and then wagered virtual coins on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 did so in the hopes of winning more of these coins, which could be used to place more wagers and, in some instances, unlock new gambling games or extend their gameplay once they ran out of coins to wager with. Between July 2, 2023 and May 31, 2025, Plaintiff and numerous other citizens across the country lost significant sums of their hard-earned money buying and placing wagers with coins on the DoubleDown Gambling Platform, and Defendant in turn reaped enormous profits from the losses these people sustained.

4.    Utah and Washington law clearly prohibit what Defendant has done. Utah's and Washington's gambling laws prohibit persons from operating or receiving revenue from wagers placed on "gambling devices." The games offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 constituted "gambling devices," and Defendant amassed significant revenue from Plaintiff and numerous others in the United Stated who lost money playing them.

5.    Accordingly, Plaintiff brings this Class Action Complaint, individually and on

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

behalf of all others similarly situated, to redress Defendant's widespread violations of Utah's Gambling Act and Washington's Gambling Act between July 2, 2023 and May 31, 2025.

## PARTIES

6.     Plaintiff Jason Koetting is a natural person and a citizen and resident of Tooele, Utah.

7.     Defendant DoubleDown Interactive LLC is a private company organized and existing under the laws of Washington, with a place of business in Seattle, Washington. Between July 2, 2023 and May 31, 2025, Defendant DoubleDown Interactive LLC operated the DoubleDown Gambling Platform at www.doubledown.com and on various mobile apps, and received substantial revenue from the losses sustained by players who purchased and wagered with virtual coins on the DoubleDown Gambling Platform across the country.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

9.     The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's and the Class members claims occurred in and emanated from this District, including Defendant's operation of the DoubleDown Gambling Platform and its collection of the enormous revenues from the losses suffered by Plaintiff and numerous other persons in who purchased and placed wagers on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, within this judicial District.

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

**FACTUAL ALLEGATIONS**

**I.    Utah's Gambling Act**

11.    Utah's Gambling Act entitles "[a]n individual who suffers an economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record" to "bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees." Utah Code Ann. § 76-9-1412(1).

12.    As defined in Utah's Gambling Act, a "fringe gaming device" is "a mechanically, electrically, or electronically operated machine or device" that:

> (i)  is not an amusement device[1] or a vending machine[2];
>
> (ii) is capable of displaying or otherwise presenting information on a screen or through any other mechanism; and
>
> (iii) provides the user with a card, token, credit, gift certificate, product, or opportunity to participate in a contest, game, gaming scheme, or sweepstakes with a potential return of money or other prize.

*Id.* § 76-9-1401(7)(a).

13.    A "video gaming device" is defined as "a device that includes all of the following":

> (a) a video display and computer mechanism for playing a game;
>
> (b) the length of play of any single game is not substantially affected by the skill, knowledge, or dexterity of the player;
>
> (c) a meter, tracking, or recording mechanism that records or

---

[1] An "amusement device" is "a game that . . . is activated by a coin, token, or other object of consideration or value" and "does not provide the opportunity to," *inter alia*, "enter into a . . . gambling event[.]" *Id.* § 76-9-1401(1)(a)(i)-(ii).

[2] A "vending machine" is "a device . . . that dispenses merchandise in exchange for money or any other item of value[,] provides full and adequate return of the value deposited," and, *inter alia*, "through which the return of value is not conditioned on an element of chance or skill[.]" *Id.* § 76-9-1401(19)(a)-(c).

CLASS ACTION COMPLAINT - 4
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

tracks any money, tokens, games, or credits accumulated or remaining;

(d) a play option that permits a player to spend or risk varying amounts of money, tokens, or credits during a single game, in which the spending or risking of a greater amount of money, tokens, or credits;

    (i) does not significantly extend the length of play time of any single game; and

    (ii) provides for a chance of greater return of credits, games, or money; and

(e) an operating mechanism that, in order to function, requires inserting money, tokens, or other valuable consideration other than entering the user's name, birthdate, or contact information.

*Id.* § 76-9-1401(20).

14.    Finally, a "gambling device or record" is "anything specifically designed for use in gambling[3] or fringe gambling[4] or used primarily for gambling or fringe gambling." *Id.* § 76-9-1401(10).

15.    Utah's Gambling Act provides that an individual who suffers an economic loss as a result of any of the above-defined devices may recover "twice the amount of the economic loss" they suffered. *Id.* § 76-9-1412(1)-(2).

16.    As alleged below, between July 2, 2023 and May 31, 2025, Defendant violated Utah's Gambling Act by operating and amassing enormous revenue from the losses sustained by Utah residents on the illicit "fringe gambling devices," "video gaming devices," and "gambling devices or records" offered on its DoubleDown Gambling Platform.

---

[3] "Gambling" is defined as "risking anything of value for a return or risking anything of value upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that someone will receive anything of value in the event of a certain outcome." *Id.* § 76-9-1401(8)(a).

[4] "Fringe gambling" is defined as "any de facto form of gambling, lottery, fringe gaming device, or video gaming device that is given, conducted, or offered for use or sale by a business in exchange for anything of value or incident to the purchase of another good or service." *Id.* 76-9-1401(6)(a).

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

## II.    Washington's Recovery of Money Lost at Gambling Act

17.    Washington's Recovery of Money Lost at Gambling Act entitles "[a]ll persons losing money or anything of value at or on any illegal gambling games" to "have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost." Wash. Rev. Code § 4.24.070.

18.    As defined in Washington's Gambling Act, a "gambling device" means:

> (1) Any device or mechanism the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance, including, but not limited to slot machines, video pull-tabs, video poker, and other electronic games of chance;
>
> (2) any device or mechanism which, when operated for a consideration, does not return the same value or thing of value for the same consideration upon each operation thereof;
>
> (3) any device, mechanism, furniture, fixture, construction or installation designed primarily for use in connection with professional gambling; and
>
> (4) any subassembly or essential part designed or intended for use in connection with any such device, mechanism, furniture, fixture, construction or installation.

*Id.* § 9.46.0241.

19.    "Gambling," as used in the Washington Gambling Act, is defined as "staking or risking something of value[5] upon the outcome of a contest of chance[6] or a future contingent event

---

[5] The Act defines a "thing of value" to include "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge." *Id.* § 9.46.0285.

[6] "Contest of chance" is defined as "any contest, game, gaming scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." *Id.* § 9.46.0225.

CLASS ACTION COMPLAINT - 6
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." *Id.* 9.46.0237.

20.    As alleged below, between July 2, 2023 and May 31, 2025, Defendant violated Washington's Gambling Act by operating and amassing enormous revenue from the losses sustained from United States residents who "gambled" by wagering "things of value" on the illicit "gambling devices" offered through the DoubleDown Gambling Platform.

### III.    The Evils of Online Gambling

21.    Gambling is one of the oldest and heavily regulated human behaviors. Even before the advent of science, religions across the world have recognized the inherent addictive nature of playing games of chance and banned them through biblical injunctions. As religious authority gave way to democratic governments, the vast majority of states in the country enacted legislation prohibiting or strictly regulating gambling activities. Unlike historical relics, these states have recognized that gambling poses a public health risk. Scientific research has confirmed and shed further light on the perils of gambling—ranging from mental health issues to physical, financial, and interpersonal problems.[7]

22.    Against this backdrop, many states, including Utah and Washington, have been steadfast in maintaining and enforcing their gambling laws, even in the event federal law takes a more permissive approach. As stated by Utah's legislature in enacting the Gambling Act:

> "If federal law authorizes online gambling in the states of the United States and provides that individual states may opt out of online gambling, this state shall opt out of online gambling in the manner provided by federal law and within the time frame provided by that law."

Utah Code Ann. § 76-9-1402(4)

23.    Similarly, Washington's legislature unequivocally stated that:

---

[7]    Harvard    Magazine,    *Governing    Games    of    Chance*    (Feb.    14,    2025), https://www.harvardmagazine.com/2025/03/harvard-research-gambling-public-health-crisis.

CLASS ACTION COMPLAINT - 7
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

> [It's] the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace

Wash. Rev. Code § 9.46.010.

24.    With technological advances, however, many casinos and other gambling operators proliferated into people's pockets through online websites and apps, including the DoubleDown Gambling Platform. These online gambling platforms have been particularly challenging to regulate because many states' anti-gambling statutes were originally enacted to prohibit in-person gambling activities.

25.    Worse still, because these online gambling platforms operate outside of the confines of gambling laws, they knowingly rig the odds against users to further exploit them. For example, while slot machines in a physical casino are required to randomize their results, online gambling platforms tailor "wins" and "losses" to manipulate consumer engagement through powerful algorithms. As the CEO of a popular online gambling platform explained:

> The secret sauce of Playtika is our ability to work with AI. We know exactly when a player is going to stop playing. We know exactly when they're going to pay. We know how many times they come in each day. I can't say we can predict with 100 percent accuracy, but we can predict, for most of our players, their activities in our games. That's the real power behind the operations side. When you can predict this, you can find solutions to problems. If someone wants to move on from your game, to delete your app, you know how to handle that player. We sound the alarm. We know how to operate and make sure a player retains in the game.[8]

---

[8]    Dean Takahashi, *Playtika CEO Robert Antokol interview— Why player retention matters now,* *VENTUREBEAT* (Jan. 6, 2022), https://venturebeat.com/games/playtika-ceo-robert-antokol-interview-why-player-retention-mattersnow/.

CLASS ACTION COMPLAINT - 8
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

26.     Between July 2, 2023 and May 31, 2025, Defendant employed similar tactics to maximize the profits it reaped through the DoubleDown Gambling Platform.

**IV.     The DoubleDown Gambling Platform**

27.     Between July 2, 2023 and May 31, 2025, Defendant owned and operated the DoubleDown Gambling Platform available at www.doubledown.com and on various mobile apps.  Between July 2, 2023 and May 31, 2025, the DoubleDown Gambling Platform allowed consumers across the United States to spend real money to purchase coins and to gamble with those coins on a wide variety of chance-based games, including slots.

28.     Between July 2, 2023 and May 31, 2025, the process of getting set up with an account to play the gambling games offered on the DoubleDown Gambling Platform simply required a consumer to input basic personal information, including, *inter alia*, his or her e-mail address and phone number.

29.     After creating an account, the consumer could begin placing wagers on the gambling games offered on the DoubleDown Gambling Platform with small periodic allotment of free coins provided upon enrollment.

30.     After invariably losing the free allotments of coins, the consumer needed to purchase more coins if he or she wishes to continue wagering with them on the particular casino game of their liking within the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

31.     Thus, between July 2, 2023 and May 31, 2025, after the consumer lost the free allotments of coins, Defendant would aggressively attempt, through persistent pop-up screens and pages, to sell the consumer additional coins – at varying prices depending on the amount of coins the consumer wished to purchase.

32.     Between July 2, 2023 and May 31, 2025, purchasing additional coins on the DoubleDown Gambling Platform could be made using a wide variety of payment methods,

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

including credit and debit cards. Regardless of the payment method, the purchased coins were instantly available for gambling on the DoubleDown Gambling Platform.

33.    Between July 2, 2023 and May 31, 2025, the coins won by consumers playing Defendant's games of chance were identical to the coins that Defendant sold.

34.    Freshly topped off with an additional allotment of purchased coins, the consumer would wager those coins in the hopes of winning more coins that he or she would otherwise have had to purchase.

35.    Notably, between July 2, 2023 and May 31, 2025, the outcome of every wager placed on each of the games offered on the DoubleDown Gambling Platform was based on an element of chance.

36.    Defendant maintains win and loss records and account balances for each person who purchased coins and used those coins to place wagers on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025. Indeed, between July 2, 2023 and May 31, 2025, once Defendant's algorithms determined the outcome of a wager and Defendant displayed the outcome, Defendant adjusted the balance of coins in the person's account. Defendant keeps detailed records of each wager and its outcome for every player of every game offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

37.    Using the information provided by users at the time they register for accounts and make purchase of coins, as well as by analyzing users' IP addresses, Defendant has intimate knowledge of, and maintains records reflecting, the geographic locations (including city and state for U.S.-based players) from which each of its users purchased of coins and lost coins wagering on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

38.    Thus, at the time Plaintiff and the other members of the Class purchased coins on and lost coins placing wagers on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, Defendant had actual knowledge that these persons were located in Utah and

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

every other state where the DoubleDown Gambling Platform was accessible based on the information they had provided while making purchases and the IP addresses associated with the devices from which they accessed the DoubleDown Gambling Platform. Defendant nonetheless happily pocketed the losses they sustained using purchased coins to place wagers on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

39.    Between July 2, 2023 and May 31, 2025, Defendant received significant revenue from U.S. residents through its illicit "gambling" games offered through the DoubleDown Gambling Platform – in direct violation of Utah's and Washington's gambling laws.

**V.    Plaintiff Jason Koetting's Experience**

40.    Prior to May 31, 2025, Plaintiff Jason Koetting created an account on the DoubleDown Gambling Platform.

41.    Between July 2, 2023 and May 31, 2025, Plaintiff lost his periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

42.    Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to continue playing his games of choice, and to unlock additional games that require a higher amount of coins to play.

43.    Between July 2, 2023 and May 31, 2025, Plaintiff spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

44.    Between July 2, 2023 and May 31, 2025, Plaintiff resided in, was a citizen of, and was physically present in Utah and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

45.    Plaintiff has not accessed the DoubleDown Gambling Platform at any point since

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

May 31, 2025.

## CLASS ACTION ALLEGATIONS

46.     Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff bring this action, on behalf of himself and members of the "Class" defined as follows:

> All residents of the United States who purchased, wagered, and lost coins on Defendant's DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, and who did not access the DoubleDown Gambling Platform after May 31, 2025.

47.     Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff bring this action, on behalf of himself and members of the "Utah Subclass" defined as follows:

> All residents of the United States who purchased, wagered, and lost coins on Defendant's DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, and who did not access the DoubleDown Gambling Platform after May 31, 2025.

48.     Members of the Class are so numerous that their individual joinder herein is impracticable.  The members of the Class number in at least the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined in discovery.  The Class may be notified of the pendency of this action at the addresses found in Defendant's records.

49.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a)     whether the DoubleDown Gambling Platform was illegal under Utah's and Washington's state gambling laws between July 2, 2023 and May 31, 2025;

(b)     whether Defendant is liable for managing, possessing, controlling, and/or

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

1    profiting from the DoubleDown Gambling Platform between July 2, 2023 and May 31,

2    2025;

3    (c)    whether Defendant's participation in operating the DoubleDown Gambling

4    Platform between July 2, 2023 and May 31, 2025 constitutes an unfair and/or unlawful

5    business practice under Washington's consumer protection statutes;

6    (d)    the amount of monetary relief the Class is entitled to recover from Defendant.

7    50.    The claim of the named Plaintiff is typical of the claims of the members of the

8    Class in that the named Plaintiff and all Class members suffered monetary loss as a result of

9    Defendant's DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

10    51.    Plaintiff is an adequate representative of the Class because his interests do not

11    conflict with the interests of the Class members he seeks to represent, he has retained competent

12    counsel experienced in prosecuting class actions, and he intends to prosecute this action

13    vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff

14    and his counsel.

15    52.    The class mechanism is superior to other available means for the fair and efficient

16    adjudication of the claims of Class members.  Each individual Class member may lack the

17    resources to undergo the burden and expense of individual prosecution of the complex and

18    extensive litigation necessary to establish Defendant's liability.  Individualized litigation

19    increases the delay and expense to all parties and multiplies the burden on the judicial system

20    presented by the complex legal and factual issues of this case.  Individualized litigation also

21    presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

22    device presents far fewer management difficulties and provides the benefits of single

23    adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

24    Defendant's liability.  Class treatment of the liability issues will ensure that all claims and

25    claimants are before this Court for consistent adjudication.

CLASS ACTION COMPLAINT - 13
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**CLAIM FOR RELIEF**

**FIRST CAUSE OF ACTION**

**Violation of Revised Code of Washington § 4.24.070, *et seq.***

**(By Plaintiff, Individually and on Behalf of the Class)**

53.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

54.     Plaintiff, members of the Class, and Defendant are all "persons" as defined by RCW § 9.46.0289

55.     The state of Washington's "Recovery of money lost at gambling" statute, RCW § 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

56.     Between July 2, 2023 and May 31, 2025, Plaintiff and the Class purchased coins with real money from Defendant and used those coins to place wagers on the games offered on the DoubleDown Gambling Platform, which led Plaintiff and the Class to "lo[se] money" as defined by the Act.

57.     All of the games offered on the DoubleDown Gambling Platform and played by Plaintiff and members of the Class between July 2, 2023 and May 31, 2025 required Plaintiff and Class members constitutes "gambling," because they required them to "stak[e] or risk[] something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence." RCW § 9.46.0237

58.     All of the games offered on the DoubleDown Gambling Platform and played by Plaintiff and members of the Class between July 2, 2023 and May 31, 2025 constituted "[c]ontest[s] of chance," because they were "contest[s], game[s], gaming scheme[s], or gaming

CLASS ACTION COMPLAINT - 14
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." RCW § 9.46.0225.

59.    Between July 2, 2023 and May 31, 2025, the coins that Plaintiff and members of the Class purchased from Defendant, and that Defendant accepted from Plaintiff and Class members as wagers on the outcomes of the games offered on the DoubleDown Gambling Platform, were each a "thing of value" within the meaning under RCW § 9.46.0285 because they permitted them to extend their games of choice and/or unlock additional games that required a higher amount of coins to play.

60.    All of the games offered on the DoubleDown Gambling Platform and played by Plaintiff and members of the Class between July 2, 2023 and May 31, 2025 were not "Amusement game[s]" under RCW § 9.46.0201 because their outcomes were dependent entirely upon chance and not upon the skill of the player and because the games were "contest[s] of chance," as defined by RCW § 9.46.0225

61.    Finally, between July 2, 2023 and May 31, 2025, all of the games offered on the DoubleDown Gambling Platform were not "pinball machine[s] or similar mechanical amusement device[s]" as contemplated because: (a) the games were electronic rather than mechanical; (b) the games conferred replays, but they were recorded and could be redeemed on separate occasions (*i.e.*, they were not "immediate and unrecorded"); and (c) the games contained electronic mechanisms that vary the chance of winning free games or the number of free games which could be won (*e.g.*, the games allowed for different wager amounts).

62.    By operating and receiving revenue from Utah residents as a result of the illegal gambling games Defendant offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, Defendant directly violated Washington's gambling laws and is liable for damages to Plaintiff and the Class members for losing money throughout the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025. RCW § 4.24.070.

CLASS ACTION COMPLAINT - 15
Case No. 2:25-cv-01854

**SECOND CAUSE OF ACTION**

**Violation of Washington Consumer Protection Act, § RCW 19.86.010, *et seq.***

**(By Plaintiff, Individually and on Behalf of the Class)**

63.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

64.     Washington's Consumer Protection Act, RCW § 19.86.010, *et seq.* ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

65.     To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce…" RCW § 19.86.020.

66.     The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it . . . Violates a statute that contains a specific legislative declaration of public interest impact."

67.     Between July 2, 2023 and May 31, 2025, Defendant violated RCW § 9.46.010, et seq. which declares that:

> "The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control. It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace."

68.     Between July 2, 2023 and May 31, 2025, Defendant has violated RCW §

CLASS ACTION COMPLAINT - 16
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

9.46.010, *et seq.*, because its DoubleDown Gambling Platform offered illegal gambling games.

69.     Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant's was engaged in the operation of making computer games available to the public.

70.     Between July 2, 2023 and May 31, 2025, Defendant's acts and practices were injurious to the public interest because Defendant, in the course of its business, continuously advertised to and solicited the general public in Washington State and throughout the United States to play its unlawful online casino games of chance. This was part of a pattern or generalized course of conduct on the part of Defendant between July 2, 2023 and May 31, 2025, and during that time many consumers were adversely affected by Defendant's conduct and put the public at risk.

71.     Between July 2, 2023 and May 31, 2025, Defendant profited immensely from its operation of the unlawful games of chances offered through the DoubleDown Gambling Platform, amassing hundreds of millions of dollars from the losers of those gambling games.

72.     As a result of Defendant's conduct, Plaintiff and the Class members were injured in their business or property—*i.e.*, economic injury—in that they lost money wagering on Defendant's DoubleDown Gambling Platform.

73.     Defendant's unfair and deceptive conduct between July 2, 2023 and May 31, 2025 proximately caused Plaintiff's and the Class members' injury because, but for the challenged conduct, Plaintiff and the Class members would not have lost money wagering at or on Defendant's DoubleDown Gambling Platform, and they did so as a direct, foreseeable, and planned consequence of that conduct.

74.     Plaintiff, on behalf of himself and the Class members, seeks to recover actual damages, treble damages, as well as attorneys' fees and costs.

CLASS ACTION COMPLAINT - 17
Case No. 2:25-cv-01854

Nick Major Law PLLC
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**THIRD CAUSE OF ACTION**

**Violation of Utah's Gambling Act, Utah Code Ann.§ 76-9-1401, *et seq.***

**(By Plaintiff, Individually and on Behalf of the Utah Subclass)**

75.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.    Plaintiff brings this claim individually and on behalf of the members of the Utah Subclass against Defendant.

77.    Utah's Gambling Act provides that "an individual who suffers an economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record may bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees."  Utah Code Ann. § 76-9-1412(1).

78.    Between July 2, 2023 and May 31, 2025, and while residing in Utah, Plaintiff purchased coins with real money from Defendant and used those coins to place wagers on the games offered on the DoubleDown Gambling Platform, which resulted in Plaintiff suffering "economic loss."

79.    Likewise, between July 2, 2023 and May 31, 2025, and while residing in Utah, at least tens of thousands of other persons (members of the proposed Utah Subclass) purchased coins with real money from Defendant and used those coins to place wagers on the games offered on the DoubleDown Gambling Platform, which resulted in each of these persons suffering "economic loss."

80.    Between July 2, 2023 and May 31, 2025, the coins that Plaintiff and members of the Utah Subclass purchased from Defendant, and that Defendant accepted from Plaintiff and Utah Subclass members as wagers on the outcomes of the games offered on the DoubleDown Gambling Platform, were each a "[]thing of value" within the meaning of section 76-9-

CLASS ACTION COMPLAINT - 18
Case No. 2:25-cv-01854

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

1401(8)(a) of the UGA.

81.     Likewise, between July 2, 2023 and May 31, 2025, the coins that Plaintiff and members of the Utah Subclass purchased from Defendant, and that Defendant accepted from Plaintiff and Class members as wagers on the outcomes of the games offered on the DoubleDown Gambling Platform, were each a "representation of value" and thus constituted "gambling bets" within the meaning of section 76-9-1401(9) of the UGA.

82.     All of the games offered on the DoubleDown Gambling Platform and played by Plaintiff and members of the Utah Subclass between July 2, 2023 and May 31, 2025 required Plaintiff and Utah Subclass members to "risk[] [a] []thing of value for a return or . . . upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that [they] will receive [a] []thing of value in the event of a certain outcome." *Id.* § 76-9-1401(8)(a). Accordingly, by accepting the coins purchased by Plaintiff and Utah Subclass members as wagers on the outcomes of games offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, Defendant engaged in "gambling" as defined in the Act.

83.     All of the games offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 provided Plaintiff and the Utah Subclass members the "opportunity to . . . enter into a gambling event," and therefore were not "amusement devices" within the meaning of the Act. *Id.* § 76-9-1401(1)(a)(i)-(ii).

84.     All of the games that Plaintiff and the Utah Subclass members lost coins playing on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 were "conditioned on an element of chance or skill," and therefore were not "vending machines" within the meaning of the Act. *Id.* § 76-9-1401(19)(a)-(c).

85.     All of the games offered on the DoubleDown Gambling Platform and played by

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

Plaintiff and members of the Utah Subclass between July 2, 2023 and May 31, 2025 were "capable of displaying or otherwise presenting information on a screen or through any other mechanism," and "provide[d] [Plaintiff and Class members] with a . . . token, credit, . . . or opportunity to participate in a contest, game, [or] gaming scheme . . . with a potential return of money or other prize." *Id.* § 76-9-1401(7)(a). Accordingly, all of the games that Plaintiff and Utah Subclass members lost coins playing on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 constituted "fringe gaming devices" as defined under the Act. *Id.* § 76-9-1401(7)(a).

86.    All of the games offered on the DoubleDown Gambling Platform and played by Plaintiff and members of the Utah Subclass between July 2, 2023 and May 31, 2025 included "a video display and computer mechanism for playing a game," "a meter, tracking, or recording mechanism that records or tracks any money, tokens, games, or credits accumulated or remaining," "a play option that permits a player to spend or risk varying amounts of money, tokens, or credits during a single game, in which the spending or risking of a greater amount of money, tokens, or credits . . . does not significantly extend the length of play time of any single game[] and . . . provides for a chance of greater return of credits, games, or money," and "an operating mechanism that, in order to function, requires inserting money, tokens, or other valuable consideration other than entering the user's name, birthdate, or contact information." *Id.* § 76-9-1401(20)(a), (c)-(e). Moreover, "the length of play of any single game [offered on the DoubleDown Gambling Platform and played by Plaintiff and members of the Utah Subclass] [wa]s not substantially affected by the skill, knowledge, or dexterity of the player[.]" *Id.* 76-9-1401(20)(b). Accordingly, all of the games that Plaintiff and Utah Subclass members lost coins playing on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 constituted "video gaming devices" as defined under the Act. *Id.* § 76-9-1401(20).

87.    Moreover, because each of the games offered on the DoubleDown Gambling

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

Platform between July 2, 2023 and May 31, 2025 was a "fringe gaming device" and/or "video gaming device" that was "conducted[] or offered for use or sale by [Defendant] in exchange for [some]thing of value," i.e., purchased coins, Defendant's acceptance of coins purchased by Plaintiff and Utah Subclass members as wagers on the games offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 constituted "fringe gambling" within the meaning of the Act. *Id.* § 76-9-1401(6)(a).

88.     All of the games offered on the DoubleDown Gambling Platform and played by Plaintiff and members of the Utah Subclass between July 2, 2023 and May 31, 2025 were "specifically designed for use in gambling or fringe gambling or used primarily for gambling or fringe gambling." *Id.* § 76-9-1401(10).  Accordingly, all of the games that Plaintiff and Utah Subclass members lost coins playing on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 constituted "gambling devices or records" as defined under the Act. *Id.* § 76-9-1401(10).

89.     Thus, between July 2, 2023 and May 31, 2025, all of the games that Defendant "operate[d]" on the DoubleDown Gambling Platform constituted "fringe gaming device[s], video gaming device[s], [and] gambling device[s]", and Defendant "receive[d]" substantial "revenue" from the coins purchased, wagered, and lost by Plaintiff and members of the Utah Subclass on the outcomes of those games. *Id.* § 76-9-1412(1).

90.     By operating and receiving revenue from Utah residents as a result of the fringe gaming devices, video gaming devices, and gambling devices or records Defendant offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, Defendant directly violated Utah's Gambling Act and is liable for damages to Plaintiff and the Utah Subclass members, in the amount of twice the aggregate sum of the "economic loss[es]" suffered by Plaintiff and Utah Subclass members on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025. *See id.* § 76-9-1412(1)-(2).

**Nick Major Law PLLC**
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

3

a judgment against Defendant as follows:

4

    A.    For an order certifying the Class under Rule 23 of the Federal

5

            Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class

6

            Counsel to represent the Class;

7

    B.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

8

9

    C.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

10

    D.    For an order of restitution and all other forms of equitable

11

            monetary relief;

12

    E.    For prejudgment interest on all amounts awarded; and

13

    F.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

14

15

.

16

**JURY DEMAND**

17

Plaintiff demands a trial by jury on all causes of action and issues so triable.

18

19

RESPECTFULLY SUBMITTED this 17th day of September, 2025.

20

NICK MAJOR LAW PLLC

21

By: /s/*Nicholas R. Major*

22

Nicholas R. Major, WSBA #49579
450 Alaskan Way S, #200

23

Seattle, WA 98104
Phone: 206.410.5688

24

Email: Nick@NickMajorLaw.com

25

CLASS ACTION COMPLAINT - 22
Case No. 2:25-cv-01854

Nick Major Law PLLC
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HEDIN LLP

Frank S. Hedin*
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131-3302
Phone: (305) 357-2107
E-Mail: fhedin@hedinllp.com


GUCOVSCHI LAW FIRM

Adrian Gucovschi*
140 Broadway, FL 46
New York, NY 10005
Phone: (212) 884-4230
E-Mail: adrian@gr-firm.com

* *Pro Hac Vice* Application Forthcoming

Counsel for the Plaintiff and Putative Class

CLASS ACTION COMPLAINT - 23
Case No. 2:25-cv-01854

Nick Major Law PLLC
450 Alaskan Way S, Suite #200
Seattle, Washington 98104
(206) 410-5688