The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JASON KOETTING, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DOUBLEDOWN INTERACTIVE LLC,<br><br>Defendant. | NO.   2:25-cv-01854-LK<br><br>**DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S MOTION TO COMPEL ARBITRATION**<br><br>NOTED ON MOTION CALENDAR:<br>February 17, 2026<br><br>ORAL ARGUMENT REQUESTED |

## I.   INTRODUCTION

Defendant DoubleDown Interactive LLC ("DoubleDown") moves to compel arbitration and to stay this action commenced by Plaintiff Jason Koetting because Plaintiff long ago agreed to DoubleDown's Terms of Use ("Terms of Use"), which include a valid and enforceable Arbitration Agreement.  Despite agreeing to arbitrate any dispute with DoubleDown, Plaintiff brings putative class claims in this Court in direct violation of the Arbitration Agreement he accepted.  Accordingly, the Court should order Plaintiff to arbitrate his dispute with DoubleDown and stay this action pending the outcome of the arbitration as required by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2 *et seq*.

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION    1
NO. 2:25-cv-01854-LK

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

## II. STATEMENT OF FACTS

### A. The Parties and Claims In This Case

DoubleDown develops, publishes, and distributes interactive entertainment content and services, including the free-to-play casino-style games at issue (the "Games"). Declaration of Joseph Sigrist ("Sigrist Decl.") ¶ 2. DoubleDown offers Games through multiple platforms, including Amazon, Apple's App Store, Google Play, and through a web browser. Id. ¶ 3.

Plaintiff Jason Koetting ("Plaintiff"), the sole named plaintiff in this action, is a resident of Tooele, Utah. First Amended Complaint ("FAC") (Dkt. # 15) ¶ 6. Plaintiff alleges three causes of action against DoubleDown: 1) violation of the Revised Code of Washington § 4.24.070; 2) violation of the Washington Consumer Protection Act, § RCW 19.86.010; 3) violation of Utah's Gambling Act, Utah Code Ann. § 76-9-1401.

Specifically, Plaintiff alleges that he created an account on DoubleDown's platform "prior to May 31, 2025." Id. ¶ 40. He claims that he played the Games "between July 2, 2023 and May 31, 2025," and during that time "lost his periodic allotments of free coins by purchasing wagers" and then "purchased additional coins from Defendant." Id. ¶ 41. He alleges that the Games are "contest[s] of chance" and that the in-game items he purchased[1] were "thing[s] of value" as those terms are defined under the RCW § 4.24.070 (Washington's Gambling Statute). Id. ¶¶ 58–59. He also alleges that DoubleDown violated the RCW § 9.46.010 (Washington's Consumer Protection Statute) because the "DoubleDown Gambling Platform offered illegal gambling games" and that its conduct "proximately caused" his injury by causing him to lose money. Id. ¶¶ 68, 73.

Plaintiff brings not only an individual claim, but also purports to bring a class action on behalf of "[a]ll residents of the United States who purchased, wagered, and lost coins on Defendant's DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, and who did not access the DoubleDown Gambling Platform after May 31, 2025." Id. ¶ 46.[2]

---

[1] Plaintiff did not make any purchases in DoubleDown's Games using either of his accounts. Sigrist Decl.¶ 5.
[2] Plaintiff also includes a "Utah Subclass" defined as "[a]ll residents of Utah who purchased, wagered, and lost coins on Defendant's DoubleDown Gambling Platform between July 2, 2023

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION     2
NO. 2:25-cv-01854-LK

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

Plaintiff further describes the class as constituting players who created accounts during the relevant time period with DoubleDown in order to play its Games and shared personal information in the process. Plaintiff alleges: "[b]etween July 2, 2023 and May 31, 2025, the process of getting set up with an account to play" DoubleDown's Games involved sharing personal information; "[a]fter creating an account, the consumer could begin placing wagers" in the Games; "[using] the information provided by users at the time they register for accounts… [DoubleDown] has intimate knowledge of… the geographic locations … from which each of its users purchased coins… between July 2, 2023 and May 31, 2025"; and "[t]hus, at the time Plaintiff and the other members of the Class purchased coins … between July 2, 2023 and May 2025, Defendant had actual knowledge" of where Plaintiff and each class member were located. *Id.* ¶¶ 28, 29, 37, 38.

DoubleDown is prepared to robustly contest (in the appropriate forum, which as explained below, is arbitration) many of Plaintiff's allegations used to define the class in this case. In particular, DoubleDown strongly objects to the Complaint's repeated (incorrect) description of its Games. Players cannot, and did not, "wager" or "los[e]" any in-game items and DoubleDown does not operate a "Gambling Platform." However, for purposes of this motion, DoubleDown understands the alleged class (and subclass) to include individuals in the United States (and Utah) who created accounts with DoubleDown in order to play their Games and then made purchases of certain in-game items within the Games from July 2, 2023 and May 31, 2025 – and did not play the Games again after May 31, 2025.

**B.    DoubleDown's Investigation Confirms Plaintiff Long Ago Accepted Its Arbitration Agreement.**

On December 22, Plaintiff's counsel shared the personal email Plaintiff used to create the account he alleges he maintained on DoubleDown's platforms to interact with DoubleDown's Games. Sigrist Decl. ¶ 4. DoubleDown thereafter used the email Plaintiff's

---

and May 31, 2025, and who did not access the DoubleDown Gambling Platform after May 31, 2025." *Id.* ¶ 47.

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S MOTION TO COMPEL ARBITRATION  
NO. 2:25-cv-01854-LK

3

FENNEMORE CRAIG, P.C.  
999 Third Avenue, Suite 600  
Seattle, Washington 98104-4039  
(206) 749-0500

counsel provided to investigate Plaintiff's accounts and determine whether Plaintiff had ever signed DoubleDown's Terms of Use, which include a mandatory Arbitration Agreement. *Id.* ¶¶ 4, 5. As a result of that investigation, DoubleDown has been able to confirm that Plaintiff *accepted* its Terms of Use via an in-game pop-up notification on May 3, 2021. *Id.* ¶ 10.

Specifically, DoubleDown identified two accounts created by Plaintiff: the first account was created on June 11, 2018. *Id.* ¶ 5. This account shows no game play. *Id.* The second account was created the next day, on June 12, 2018. *Id.* Beginning in 2020 (after Plaintiff initially created his accounts), DoubleDown began to require all players (including new and returning players) to affirmatively accept DoubleDown's Terms of Use before they could continue using an account or create a new account in order to play the games and purchase any in-game items, regardless of the login method chosen (Google, Facebook or Apple). *Id.* ¶ 6. This includes the period between July 2, 2023 and May 31, 2025, during which the alleged class members in this case are alleged to have created accounts and made purchases within DoubleDown's Games. *Id.*

Affirmative acceptance was (and continues to be) obtained through a pop-up notification providing DoubleDown's Privacy Policy and Terms of Use. *Id.* ¶ 7. When presented with this pop-up, the player was (and continues to be) required to click a large and prominently displayed green button, which reads: "I agree to the Terms of Use and the Privacy Policy" ("In-Game Pop-Up Banner"). *Id.*, Exhibit A (In-Game Pop-Up Banner). The In-Game Pop-Up Banner further includes the following language:

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S MOTION TO COMPEL ARBITRATION
NO. 2:25-cv-01854-LK

4

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

*[Screenshot of a "We Care About Your Privacy & Rights" pop-up banner from Double Down Casino, notifying users that the Terms of Use include a "Binding Arbitration and Class Waiver" provision, with an "I agree to the Terms of Use and Privacy Policy" button.]*

*Id.* ¶¶ 7-8. If a player does not accept the Terms of Use, they cannot continue to use an account. *Id.* ¶ 9.

DoubleDown's internal data and records reflect that Plaintiff affirmatively accepted the Terms of Use as described above when he logged into his account on May 3, 2021 and received a pop-up banner (displayed above and attached as Exhibit A to the Sigrist Decl.) requiring affirmative acceptance of the Terms. *Id.* ¶ 10. A data summary record of Plaintiff's account actions on May 3, 2021, attached as Exhibit B to the Sigrist Declaration, show the precise timing of Plaintiff's acceptance of the Terms of Use. *Id.*

As explained in the Sigrist Declaration, the affirmative acceptance requirement adopted in 2020 further establishes that all of the class members described in Plaintiff's Complaint, *see supra* pages 2–3, also necessarily signed DoubleDown's Terms of Use, which contains an arbitration agreement. *Id.* ¶¶ 6–9, 11, 13. During the course of the entire relevant class time period—July 2, 2023 through May 31, 2025—the affirmative acceptance requirement was in place. Players who sought to either create a new account or continue using an existing account during that time period were required to sign the Terms of Use. *Id.* ¶¶ 6–9, 11, 13.

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION        5
NO. 2:25-cv-01854-LK

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

The version of the Terms of Use accepted by Plaintiff on May 3, 2021 was effective as of April 2020 (i.e., the "April 2020 Terms of Use" or "Terms of Use"). *Id.* ¶ 11, Exhibit C (April 2020 Terms of Use). As discussed in more detail below, the April 2020 Terms of Use—as well as all subsequent updated versions of the Terms, *id.*— include a mandatory Arbitration Agreement.

**C.    The Terms of Use Contain an Arbitration Agreement and Delegation Provision.**

The April 2020 Terms of Use, accepted by Plaintiff, include a binding arbitration agreement ("Arbitration Agreement"). *See* Sigrist Decl. ¶ 14; Exhibit C (Terms of Use). By its plain language, the Arbitration Agreement applies broadly, including to disputes claims or controversies involving DoubleDown's Games:

> You and DoubleDown agree that any past, pending, or future dispute, claim or controversy arising out of or relating to your access to or use of any DoubleDown Site (including Services) or to these Terms of Use (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of these Terms of Use) (a "Dispute"), shall be determined by arbitration…

*See id.* A "Dispute" is defined as "any past, pending, or future dispute, claim or controversy arising out of or relating to your access to or use of any DoubleDown Site (including Services)" – where "Services" are defined as "DoubleDown's social games and related services, which include applications for mobile devices and DoubleDown-branded Web sites." *See id.* ¶ 14. By accepting the Terms of Use, players agree that all "Disputes" are to be resolved through binding arbitration, which is to be administered by the AAA and "in accordance with the rules of the American Arbitration Association ('AAA'), as modified by [the] Terms of Use." *Id.* ¶ 18.

The Arbitration Agreement also contains a delegation clause providing the "arbitrability of these Terms of Use …shall be determined by arbitration." *Id.* Importantly, DoubleDown's

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION — 6
NO. 2:25-cv-01854-LK

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

Terms of Use allow players thirty (30) days from acceptance of the Terms of Use to opt out of the Arbitration Agreement by sending an email to DoubleDown. *See Id.* ¶ 19; Exhibit A (Terms of Use). However, DoubleDown has no record that Plaintiff ever opted out. *Id.* ¶ 22.

### III.   LEGAL STANDARD

"It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Even "the most minimal indication of the parties' intent to arbitrate must be given full effect." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013) (same), aff'd, 669 F. App'x 487 (9th Cir. 2016).

The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and recognizes a policy that "courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Accordingly the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution" that applies to all federal and state court proceedings. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Courts should "'rigorously enforce' arbitration agreements according to their terms" to further the FAA's strong policy favoring arbitration. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted). To do so, courts must "place Arbitration Agreements on the same footing as all other contractual provisions," and must "ensur[e] that private arbitrations are enforced." *Mortensen v. Bresnan Commc'ns, LLC*, 722

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION
NO. 2:25-cv-01854-LK

7

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

F.3d 1151, 1159 (9th Cir. 2013) (alteration in original) (citation & internal quotation marks omitted).

The party seeking arbitration bears the initial burden of showing a valid arbitration agreement exists. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). In determining whether parties agreed to arbitrate, "courts … apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Any doubts regarding the scope of an arbitration agreement should be resolved in favor of arbitrability. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). In evaluating a motion to compel arbitration, courts must consider evidence of the existence of an arbitration agreement. *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, at *5 (W.D. Wash. 2019) (accepting declaration to authenticate the terms of use).

## IV. ARGUMENT

Plaintiff accepted DoubleDown's Terms of Use and its Arbitration Agreement. The agreement undoubtedly exists; a copy is appended hereto as Exhibit C to the Sigrist Declaration. Plaintiff's claims, which arise out of his use of DoubleDown's Games, fall within the scope of that Arbitration Agreement and must be pursued in arbitration. To the extent that Plaintiff argues that the arbitration agreement is invalid or unenforceable, those arguments are for the arbitrator to resolve, pursuant to the agreement's delegation clause.

**A.   Plaintiff Entered Into a Binding and Enforceable Arbitration Agreement.**

Under the FAA,[3] ordinary contract principles govern whether parties have agreed to arbitrate. 9 U.S.C. § 2; *see also Kaplan*, 514 U.S. at 944. Here, an arbitration agreement was formed between Plaintiff and DoubleDown. DoubleDown's evidence demonstrates Plaintiff

---

[3] The Arbitration Agreement here is governed by the FAA because (1) the Arbitration Agreement is in writing and (2) DoubleDown's business operations satisfy the FAA's "commerce" threshold. So long as a party is "engaged in business throughout [more than one state]" or is generally engaged in a business with "broad impact…on the national economy," its arbitration provisions are governed by the FAA. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57-58 (2003). DoubleDown's Games are widely available in the United States, including through U.S.-based platforms such as Amazon and Apple. Sigrist Decl. ¶ 3.

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION
NO. 2:25-cv-01854-LK

8

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington  98104-4039
(206) 749-0500

affirmatively accepted the Terms of Use on May 3, 2021.  *See* Sigrist Decl. ¶ 11, Exhibit B; *see also* FAC ¶ 40 (Plaintiff admits he created an account "[p]rior to May 31, 2025").[4]  The Arbitration Agreement Plaintiff signed allowed Plaintiff to opt-out within thirty days after the acceptance, but DoubleDown did not receive an opt-out notice by Plaintiff.  *Id*. ¶¶ 21-22.

Therefore, by clicking the button "I agree to the Terms of Use and the Privacy Policy" on the In-Game Pop-Up Banner, *id.* ¶¶ 7-10, Plaintiff entered into a binding arbitration agreement with DoubleDown as of May 3, 2021.  This method of acceptance is a valid means to agree to a binding contract pursuant to Delaware law (the choice of law within the Terms). *See Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014) (quotations omitted) (a contract is formed when a party clicks a box next to a sentence reading "I have read and agree to the terms of the [contract]").  Washington and Utah law compels the same outcome. *See e.g., In re Wyze Data Incident Litgation*, 2020 WL 6202724, at *2 (W.D. Wash. 2020) (granting motion to compel arbitration where, as here, users had to click a box indicating that they agreed to Defendant's terms and conditions.); *Pagano v. NordicTrack, Inc.*, 749 F.Supp.3d 1183, 1190 (D. Utah. 2024) (same).

This Court must thus enforce the parties' arbitration agreement and compel the claims to arbitration.  *See* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration […] the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."); *see also Dean Witter*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (same).

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION
NO. 2:25-cv-01854-LK

9

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington  98104-4039
(206) 749-0500

### B. The Arbitration Agreement Applies to Plaintiff's Claims.

There can be no serious dispute that Plaintiff's claims fall squarely within the scope of the Arbitration Agreement. There is a presumption that where an agreement contains an arbitration clause, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.,* 475 U.S. at 650 (1986) ("[I]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23 and Me, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016); *Tuminello v. Richards*, 2012 WL 750305, at *2 (W.D. Wash. Mar. 8, 2012) ("[T]he FAA divests courts of their discretion and requires courts to resolve any doubts in favor of compelling arbitration."), aff'd, 504 F. App'x 557 (9th Cir. 2013).

Here, Plaintiff's claims are within the scope of the Term of Use's Arbitration Agreement, which broadly cover "any past, pending, or future dispute, claim or controversy arising out of or relating to your access to or use of any DoubleDown Site (including Services) or to these Terms of Use." *See* Sigrist Decl. Exhibit C (Terms of Use). The term "Services" is defined as "your use of DoubleDown's social games and related services, which include applications for mobile devices and DoubleDown-branded Web sites." *Id.* Given that Plaintiff's (and the alleged class members') alleged injuries would not have arisen but for the use of DoubleDown's Games, Plaintiffs' claims are clearly governed by the Arbitration Agreement. *See Harbers v. Eddie Bauer, LLC,* 2019 WL 6130822, at *8 (W.D. Wash. Nov. 19, 2019) (finding a consumer dispute was covered by a similarly broad arbitration agreement); *see also Simula*, 175 F.3d at 721 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)) ("[F]actual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.").

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION      10
NO. 2:25-cv-01854-LK

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

Courts repeatedly interpret similar "any disputes… arising out of or relating to"-type language to broadly encompass statutory, tort, and other common-law claims. *David Terry Investments, LLC-PRC v. Headwaters Dev. Group L.L.C.*, 13 Wash. App. 2d 159, 168 (2020) (For purposes of the scope of an agreement's arbitration clause regarding a dispute, the phrases "arising out of," "relating to" are required to be "similarly and broadly construed" in favor of arbitration.); *Whorton v. Fran Rest, LLC*, 33 Wash. App. 2d 1042 (Wash. App. Div. 1 2025), review denied, 4 Wash. 3d 1028, 569 P.3d 729 (2025) ("the Ninth Circuit has interpreted the language 'arising out of or related to' to encompass any dispute that has 'some logical or causal connection' to the agreement."); *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993) ("any dispute" or "any claim" language is "routinely used … to secure the broadest possible arbitration coverage."); *Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1534-35 (9th Cir. 1987) ("An agreement to arbitrate 'any dispute' without strong limiting or excepting language immediately following it logically includes not only the dispute, but the consequences naturally flowing from it[.]").[5]

Plaintiffs' claims here, which are alleged to arise squarely out of Plaintiffs' use of DoubleDown's platforms and Games (*i.e.*, "Services"), thus fall within the scope of the Arbitration Agreement.

**C.    Any Further Defenses Must Be Decided By The Arbitrator.**

The Arbitration Agreement contains a delegation clause, which requires that all disputes regarding "the breach, enforcement, construction, validity, interpretation, enforceability, or

---

[5] *See also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (clause requiring arbitration of "[a]ny dispute, controversy or claim arising out of or relating to" parties' agreement is "broad and far reaching"); *Optimum Productions v. Home Box Off.*, 839 Fed. Appx. 75, 77 (9th Cir. 2020) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)) (the wording "any dispute" shall be construed broadly; and the language "arising in connection with" "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."); *Whatley v. Chapman*, 2004 WL 2108876, at *2 (Utah App. 2004) (arbitration agreements with broad language can include tort as well as contract claims as long as they "have their roots in the relationship between the parties which was created by the contract").

arbitrability of these Terms of Use." *See* Sigrist Decl. Exhibit C (Terms of Use). This delegation clause requires that this Court compel this case to arbitration because, as dictated by the U.S. Supreme Court, where there is such a delegation, "a court may not decide the arbitrability issue[,]" even when the argument for arbitrability appears to be 'wholly groundless.'" *Henry Schein*, 586 U.S. at 68. As such, Plaintiffs must be compelled to arbitrate regardless of any arguments they may present here. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). If they so agree, "an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein,* 586 U.S. at 65.

The same result is required by the AAA Rules, which are incorporated into the arbitration agreement, and provide that the arbitrator shall decide all questions of arbitrability, including "any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." AAA Rule 7 (a). "The arbitrator shall [also] have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." AAA Rule 7(b). The inclusion of an arbitration association's rules in an arbitration agreement weighs heavily in favor of arbitration. *McLaughlin v. McCann*, 942 A.2d 616, 627 (Del. Ch. 2008) (the arbitration clause referencing American Arbitration Association Rules indicated clear intent to arbitrate arbitrability).

To the extent Plaintiffs intend to argue that the arbitration agreement is invalid and/or unenforceable, this is exactly the type of defense that the parties delegated to the arbitrator. *See, e.g., Orix LF, LP v. Inscap Asset Mgt., LLC*, 2010 WL 1463404, at *1 (Del. Ch. Apr. 13, 2010) ("so long as the defendants have a colorable argument that their claims are arbitrable, the arbitrator-not this court-must determine the ultimate question of substantive arbitrability.")

When a party seeks to compel arbitration and stay litigation under § 3 of the FAA and the Court determines the Arbitration Agreement is applicable, the Court has no discretion; it "shall" stay the action. 9 U.S.C. § 3; *see also Dean Witter*, 470 U.S. at 218 (FAA mandates

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION
NO. 2:25-cv-01854-LK

12

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

that the court "*shall* direct the parties to proceed to arbitration" and "leaves no place for the exercise of discretion") (emphasis in original), *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), *Coppock v. Citigroup, Inc.*, 2013 WL 1192632 at *10 (W.D. Wash. Mar. 22, 2013) (granting motion to compel arbitration and staying the case pending arbitration). Congress intended that § 3 effectuate the FAA's policy favoring prompt arbitration without the delay of an intervening appeal. *See* 9 U.S.C. § 16 (allowing a one-way appellate right, *i.e.*, the party seeking to compel arbitration can appeal if a district court denies the motion, but a party opposing arbitration cannot appeal if the court grants the motion). Because DoubleDown and Plaintiff have entered into a valid Arbitration Agreement that covers this dispute, the Court must compel arbitration of Plaintiff's claims and stay further proceedings in this case.

## V.    CONCLUSION

For the foregoing reasons, DoubleDown respectfully requests that this Court (1) compel Plaintiffs to arbitrate all of their claims (including individual and class claims) and (2) stay this action pending resolution of the arbitration proceeding.

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S
MOTION TO COMPEL ARBITRATION — 13
NO. 2:25-cv-01854-LK

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

DATED: January 20, 2026.

**FENNEMORE CRAIG, P.C.**

By  */s/ Michael E. Chait*
Michael E. Chait, WSBA #48842
999 Third Avenue, Suite 600
Seattle, WA 98104-4039
Tel: (206) 749-0500
Fax: (206) 749-0600
Email: mchait@fennemorelaw.com

**MITCHELL SILBERBERG & KNUPP LLP**

Hannah G. Shepherd (*pro hac vice admitted*)
Karin Pagnanelli (*pro hac vice admitted*)
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Tel: (310) 312-2000
Email: hannah.shepherd@msk.com
Email: KGP@msk.com

**MITCHELL SILBERBERG & KNUPP LLP**

Theresa B. Bowman (*pro hac vice admitted*)
1818 N Street N.W., 7th Floor
Washington, DC 20036
Tel: (202) 355-7900
Email: tbb@msk.com

*Attorneys for Defendant Doubledown Interactive LLC*

*I certify that this memorandum contains 4,040 words, in compliance with the Local Civil Rules.*

DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S MOTION TO COMPEL ARBITRATION
NO. 2:25-cv-01854-LK

14

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500

**CERTIFICATE OF SERVICE**

I hereby declare under penalty of perjury under the laws of the United States of America that on this date, the foregoing document was filed electronically with the Court and thus served simultaneously upon all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on January 20, 2026.

_____
Xiaoshi Zhang

CERTIFICATE OF SERVICE
NO. 2:25-cv-01854-LK

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104-4039
(206) 749-0500